UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALFRED K. NIPPERT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 3:09-cv-1068 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| JAMES R. JACKSON, JR. ) | |
| individually and d/b/a STONEWALL FARM, ) | |
| JACKSON, DENNEY and DAVIS, INC., and ) | |
| JACKSON PLACE, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the court is the plaintiff's Motion for Partial Summary Judgment (Docket No. 112), to which the defendants have responded (Docket Nos. 141, 149, and 150), and the plaintiff has filed replies (Docket Nos. 145, 151). For the reasons discussed herein, the plaintiff's motion will be denied.

## FACTUAL BACKGROUND

The plaintiff, Alfred K. Nippert, Jr. ("Nippert"), made a series of loans to KCA Enterprises, Inc. ("KCA"), a company formed in 1999 by the defendant, James R. Jackson ("Jackson").[1] This case arises from KCA's failure to repay those loans.

---

[1] Unless otherwise noted, the facts are drawn from the plaintiff's statement of undisputed facts (Docket No. 117), the defendants' responses thereto (Docket Nos. 142, 149, and 150), the plaintiff's replies (Docket Nos. 146, 151), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

From April 18, 2000 to January 10, 2003, the plaintiff loaned $1,696,000 to KCA so that KCA could purchase additional inventory in connection with its business of selling officially licensed college sports and NASCAR merchandise.[2] Each loan was memorialized by the execution of a demand promissory note signed by Jackson, as president of KCA. Nippert obtained a 30% share in KCA's stock in exchange for making these loans, while Jackson remained the majority shareholder, possessing 51% of KCA's shares.[3] Jackson was the only person who contributed to the daily management of KCA.

Aside from KCA, Jackson also managed two other companies at all relevant times: Jackson, Denney, and Davis, Inc. ("JDD"), and Jackson Place, Inc. ("Jackson Place").[4] JDD is an insurance company that Jackson co-founded in 1988. Originally, Jackson was a 1/3 shareholder in JDD, although by the end of the 1990s, Jackson became a 100% shareholder in the corporation. Jackson Place owns and operates a piece of property located on Main Street in Ashland City, Tennessee. Jackson was originally a 50% shareholder in Jackson Place, but in 2005, he deeded his interest to his ex-wife, Angela Jackson, in exchange for the deed to his home and farm located in Ashland City.

---

[2] KCA's original business plan was to supply products to high schools to assist them in fund-raising campaigns.

[3] At its formation, KCA had three shareholders: Jackson, who possessed 91% of KCA's shares of stock, and his three adult children, each of whom possessed 3% shares. Jackson's ownership interest declined to 81% after his then brother-in-law was given a 10% share in KCA's stock when he joined the company.

[4] Although JDD and Jackson Place generally dispute this fact, they have failed to cite to any evidence creating a genuine dispute. (*See* Docket Nos. 149, 150.)

Since their formation, all three entities failed to observe certain corporate formalities.[5] For instance, Jackson issued shares of KCA stock to his adult children for no consideration. In addition, both KCA and Jackson Place did not issue stock certificates, operated without bylaws, and did not have board of directors meetings and shareholders meetings. Neither did JDD have board of directors meetings or shareholders meetings.[6]

The lines among the three corporate entities and between the entities and Jackson were also blurred. For example, Jackson, KCA, and JDD shared employees, while Jackson and KCA shared the same certified public accountant.[7] For a period of time, Jackson ran all three companies out of the same location.[8] Moreover, Jackson transferred funds from KCA to both

---

[5] Both JDD and Jackson Place dispute certain facts concerning the extent to which they observed corporate formalities. Both dispute that they failed to have board of directors meetings or shareholders meetings. (Docket Nos. 149, 150.) In addition, JDD disputes that it shared employees with KCA and Jackson and that it shared business locations with KCA. (Docket No. 149.) Jackson Place also disputes that it did not have any bylaws. (Docket No. 150.) However, as to all of these purported factual disputes, neither defendant has cited any record evidence creating a genuine dispute as to the above facts.

[6] While Jackson declares that JDD had board meetings until he became its sole shareholder in the late 1990s (Docket No. 144, at 1), his prior deposition testimony contradicts that assertion. Indeed, Jackson previously admitted that JDD never had a board meeting and that, in fact, all three corporations never had a board meeting. (Docket No. 116, Ex. A, at 42; Docket No. 118, Ex. A, at 49.) Accordingly, the court will not consider Jackson's assertion. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony.").

[7] Jackson also caused KCA to obtain insurance policies through JDD.

[8] Another entity, SDJ, LLC, served as KCA's sales representative and rented office space from it. (Docket No. 144, at 6.) Jackson states that at all times the businesses were separate entities. (*Id.*)

3

JDD and himself and considered these transfers loans.[9] In addition to these transfers, it is undisputed that Jackson used KCA funds to pay: (1) monthly payments for his ex-wife's BMW convertible and his own Dodge pick-up truck;[10] (2) the costs of acquiring hay for the horses on his horse farm; and (3) the travel expenses of his girlfriend and ex-wife. Jackson also debited KCA's account in amounts up to $110,000, although he could not remember why KCA would have required such a large sum of cash.

After receiving Nippert's loans, KCA purchased additional inventory for its business. Also, at some point, KCA secured Wal-Mart as a customer, which generated a large amount of sales. However, KCA lost the Wal-Mart account in 2008. After making one payment to Nippert in the amount of $100,000, KCA failed to make any other payments to Nippert on the loans. Nippert then brought suit in 2007 against KCA in the United States District Court for the Southern District of Ohio and obtained an agreed judgment against KCA in the amount of $2,933,459.17[11] on November 1, 2008.[12]

---

[9] At deposition, Jackson was shown checks from KCA to JDD where the memo lines on the checks stated that the checks represented either loans from KCA to JDD or repayments for loans made by JDD to KCA. (Docket No. 118, at 27-31.) KCA's transfer of funds to Jackson was for Jackson's horse farm. Jackson states that these transfers were short-term loans and that, to the best of his knowledge, any loans made by KCA to JDD and himself were repaid. (Docket No. 144, at 3-4.)

[10] Jackson testified at deposition that he used the pick-up truck for both KCA and personal business. (Docket No. 116, Ex. A, at 44.)

[11] Nippert was also awarded attorney's fees and interest at the contractual rate of 10% per year beginning on November 1, 2008.

[12] Before making any payments in satisfaction of the judgment, KCA filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee on April 24, 2009. (*See In re KCA Enters., Inc.*, No. 3:09-bk-04629 (Bankr. M.D. Tenn. filed on Apr. 24, 2009)). A review of the bankruptcy docket reveals that the debt at issue in this case was not discharged in bankruptcy.

Nippert then filed this suit on November 6, 2009. (Docket No. 1.) His Amended Complaint contains claims against Jackson for: (1) breach of fiduciary duty; (2) gross mismanagement; (3) conversion; and (4) fraud. (Docket No. 55.) The Amended Complaint also contains claims for piercing the corporate veils of KCA, JDD, and Jackson Place and civil conspiracy against all the defendants. (*Id*.) After Nippert filed the present lawsuit, Jackson sold his interest in JDD to his ex-wife. Jackson has admitted that the current litigation with Nippert partially impacted this decision.

## ANALYSIS

**I.     Standard of Review**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, a moving plaintiff must show that the defendant cannot raise a genuine issue of fact regarding any element of the relevant claims. In both instances, "[i]n evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable."  *Anderson*, 477 U.S. at 249, 252.  An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party.  *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.   The Plaintiff's Motion

In his Motion for Partial Summary Judgment, the plaintiff moves the court to pierce the corporate veils separating KCA, JDD, and Jackson Place from Jackson.  (Docket No. 112.)  Jackson asserts that there are genuine disputes of material fact that preclude summary judgment on this issue.  Moreover, JDD and Jackson Place contend that summary judgment is inappropriate as to each of them because, unlike KCA, they never received a loan from the plaintiff or engaged in any misconduct with relation to him.[13]  (Docket Nos. 149, 150.)

Under Tennessee law, to pierce the corporate veil, "a court must be convinced that the separate corporate entity is a sham or a dummy or that disregarding the separate corporate entity is necessary to accomplish justice."  *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88-89 (Tenn. 2010) (quotation marks omitted).   "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief."  *Oceanics Schs., Inc.*

---

[13] JDD and Jackson Place thus argue that these facts insulate them from any application of the veil piercing doctrine.  However, even assuming that these facts are true, the Tennessee Court of Appeals has noted that, "[b]y suitable evidence, it may be established that separate corporations should be treated as a single entity." *Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) (piercing corporate veils after sole shareholder caused one of his corporations to become insolvent through fraudulent transfer of assets to his other solely owned corporation and holding both the sole shareholder and the solvent corporation liable to the plaintiff, a creditor of the insolvent corporation).

6

*v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). When analyzing the issue, courts examine the following factors:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Trost*, 333 S.W.3d at 89, n.13 (quoting *FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). Although it is not necessary that all of the above factors weigh in favor of piercing the corporate veil, the equities must "substantially favor the party requesting the court to disregard the corporate status." *Id*. at 89.

Some of these factors are present here. Indeed, there is undisputed evidence that Jackson, KCA, and JDD shared employees, while Jackson and KCA shared the same certified public accountant. It is also undisputed that Jackson: (1) ran all three companies out of the same location for a period of time; (2) transferred funds from KCA to both JDD and himself and considered these transfers loans; and (3) used KCA funds to pay monthly payments for his and his ex-wife's vehicles, hay for the horses on his horse farm, and travel expenses for his girlfriend and ex-wife.[14] Jackson also debited KCA's account in amounts up to $110,000, although he

---

[14] The plaintiff asserts that he would have been able to more easily trace Jackson's alleged fraud had Jackson not ordered the destruction of KCA's corporate books and records. (Docket No. 113, at 10.) Jackson, however, denies that he or any other KCA employee destroyed documents regarding KCA's business operations. (Docket No. 144, at 5.) In addition,

7

Case 3:09-cv-01068 Document 152 Filed 10/18/11 Page 7 of 9 PageID #: 1356

could not remember why KCA would have required such a large sum of cash. In addition, all three entities failed to observe certain corporate formalities. Specifically, it is undisputed that Jackson issued shares of KCA stock to his children for no consideration, that KCA and Jackson Place did not issue stock certificates and operated without bylaws, and that all three entities did not have board of directors meetings and shareholders meetings.

While the above facts are undisputed, Jackson asserts, among other things, that any payments made by KCA to both JDD and himself were short-term loans and, to the best of his knowledge, were repaid. (Docket No. 144, at 3-4.) He further asserts that he used all of Nippert's loan proceeds in KCA's normal course of business. (*Id*. at 3.) In addition, he claims that the plaintiff was aware that KCA held no board meetings and that KCA and JDD shared expenses. (*Id*. at 5-6.) The plaintiff has also admitted that he was aware that KCA and JDD shared office space for some period of time.[15] (Docket No. 146, at 8.)

The Tennessee Supreme Court has stated that "[i]ssues relating to the piercing of the corporate veil are not ordinarily appropriate for resolution by summary judgment." *Trost*, 333 S.W.3d at 89. Instead, "a determination of whether or not a corporation is a mere instrumentality of an individual or a parent corporation is ordinarily a question of fact for the jury." *Id*. (quoting *Electric Power Bd. Of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985).

---

he states that all of the documents regarding KCA's business operations are stored in a computer that is in the plaintiff's possession and control. (*Id*.) The court need not resolve this issue for purposes of the present motion.

[15] Although the plaintiff's awareness of such facts is not a part of the multi-factor inquiry Tennessee courts utilize when determining whether to pierce the corporate veil, it does appear relevant as to the degree of the defendant's alleged wrongdoing. Therefore, the court will not exclude this proof at trial.

8

Although there is evidence in the record that may support piercing the corporate veil in the present case, it is not so overwhelming that a reasonable juror must find that the corporate forms of KCA, JDD, and Jackson Place must be disregarded. Accordingly, this issue will remain for trial.

## **CONCLUSION**

Based on the foregoing, the plaintiff's motion for partial summary judgment will be **DENIED**.

It is so ordered.

_____
ALETA A. TRAUGER
United States District Judge

9